IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

EDWARD J. AGA AND BEVERLY )        CV. NO. 08-00400 DAE-LEK
J. HAMAMOTO,                )
                           )
          Plaintiffs,       )
                           )
     vs.                    )
                           )
MICHAEL W. STEELE,          )
                           )
          Defendant.        )
_____ )

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S COUNTER MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing. After reviewing Plaintiffs' motion and Defendant's

motion, and the supporting and opposing memoranda, this Court DENIES

Plaintiffs' motion and GRANTS Defendant's motion.

BACKGROUND

This case involves claims by two pro se Plaintiffs, a married couple,

against Defendant Steele, who is a deputy attorney general with the Civil

Recoveries Division of the Attorney General's Office for the State of Hawaii. The

claims arise from Defendant's use of levy procedures to obtain child support

payments that Plaintiff Beverly Hamamoto ("Hamamoto") had failed to pay for

years for her son Aaron Hamamoto, whose custodial parent is the father Alvin Hamamoto.

The Family Court of the First Circuit for the State of Hawaii (the "Family Court") ordered Hamamoto to pay child support for her son Aaron in the amount of $260.00 per month beginning on August 20, 1996.  Hamamoto was required to make the first several payments directly to Alvin, and thereafter to the Child Support Enforcement Agency ("CSEA").[1]  Hamamoto's last payment was received by CSEA on September 11, 2000, until she paid the arrears in 2008.

On July 6, 2001, Hamamoto filed, pro se, a declaration in the Family Court requesting that child support payments be discontinued because Aaron was 18 years old, graduated from high school, and was not an adult student. Hamamoto acknowledged that she knew she owed $4,528.70 for the period of non-payment since the fall of 2000, and requested that she be allowed to pay this amount directly to Aaron in monthly increments.

On October 9, 2007, CSEA notified Hamamoto that she owed past-due child support payments for a total of $6,868.00.  Hamamoto claims, in her memorandum of law written by Plaintiff Aga, that she was in contact with CSEA at

---

[1] CSEA administers Hawaii Revised Statute Chapter 576D and has authority to take legal and administrative action to enforce support orders, including the attaching and seizing of assets.  Haw. Rev. Stat. § 576D-3.

2

this time and informed them of the declaration she filed in Family Court.  Plaintiff Hamamoto, however, provides no evidence to support this allegation.

As of March 31, 2008, Hamamoto was in arrears for a total of $4,528.70.  CSEA referred the case to Defendant for collection.  On May 19, 2008, Defendant served notices of levy on Bank of Hawaii, First Hawaiian Bank, and Merrill Lynch, noting that Hamamoto owed $4,528.70 as of March 31, 2008, and that Hawaii Revised Statute section 576D-10.5 provides a lien for child support delinquency assessments (the "Notices of Levy").  The Notices of Levy also stated that Hamamoto had "refused or neglected to pay" the amount owed. (Def.'s Ex. 4.) The Notices of Levy directed the institutions to encumber Hamamoto's accounts up to the amount past due.  Bank of Hawaii responded that it held $609.39 pursuant to the Notice of Levy.  First Hawaiian Bank held $1,227.41.  Merrill Lynch responded that it had an account, but would not hold the funds without a court order.

On May 19, 2008, First Hawaiian Bank sent Hamamoto a letter informing her of the Notice of Levy, the holding of her funds, and a copy of the Notice of Levy with the $4,528.70 amount listed.

On May 20, 2008, Hamamoto contacted Defendant's office about the Notices of Levy.  Hamamoto requested proof of the delinquency.  That day,

Defendant's office faxed Plaintiff a copy of the original Family Court order and a certified statement of account balance.  Defendant does not inform this Court of the amount listed on the statement of account balance, whether it listed the $4,528.70 amount set forth on the Notices of Levy, or the $6,868.00 amount that she had previously been informed that she owed.  Hamamoto called back and stated that pursuant to the declaration she filed in Family Court she thought the payment was to be made directly to her son, and not the custodial parent.  Hamamoto did not complain about the amount due.

Hamamoto agreed to stipulate to have funds disbursed from Merrill Lynch to CSEA in the amount of $4,528.70 for the past child support.  Defendant prepared the stipulation to be filed in the Family Court and sent it to Hamamoto on May 21, 2008, for her review and signature.

On May 22, 2008, Defendant's office received from Plaintiff Aga an unfiled complaint that was to be filed in the Office of Disciplinary Counsel complaining that Defendant abused his authority and seeking withdrawal of the Notices of Levy.  Plaintiff Aga also enclosed a note saying "Lots more to come!". (Def.'s Ex. 8.)  The disciplinary counsel responded that it would not initiate an investigation.

4

On May 29, 2008, Defendant's office received a letter from Plaintiff Hamamoto stating that she would not execute the stipulation.  She further stated that she would withdraw $4,528.70 from her retirement account and would contact CSEA once she had possession of the funds and resolve who should receive it. Hamamoto accused Defendant of illegal activity and stated "prepare yourselves for the worst consequences in the future!? [sic]".  (Def.'s Ex. 10.)

On May 29, 2008, Defendant filed a motion for order of sequestration and payment of funds for child support in the Family Court.  A hearing was set for June 27, 2008.

On June 3, 2008, the Department of Accounting and General Services for the State of Hawaii notified Hamamoto that her 2007 State income tax refund of $517.79 had been identified for setoff for her child support payment debt.  She was informed that she could request a hearing to CSEA to contest the setoff.  On or about July 2, 2008, CSEA notified Hamamoto that a hearing would be conducted on August 5, 2008, regarding the setoff.  Hamamoto was also informed that she could have someone represent her at the hearing.

On June 9, 2008, Plaintiff Aga wrote a letter to Defendant stating that they received notice that Hamamoto's State tax refund of $517.79 was taken by CSEA as a setoff of the debt owed by Hamamoto.  Aga stated that he would

represent Hamamoto at any CSEA hearing, but that they did not believe they could have a fair hearing and thus would not be pursuing a hearing with CSEA. Aga also continued to assert that Hamamoto be allowed to make payment directly to Aaron. Aga also accused Defendant of due process violations for attempting to collect on $6,868 in October 2007, adjusting it to $4,528.70, but failing to give Hamamoto notice that the amount had been adjusted, and sending the Notices of Levy.

Plaintiffs filed an opposition in Family Court to the motion for order of sequestration on June 25, 2008. At the hearing, Defendant informed the court that the amount owed had been reduced to $4,010.91 due to the setoff from the State tax return. Hamamoto asked that Aga be allowed to represent her. The court denied her request because Aga was not an attorney or a party to the proceedings. Hamamoto stated she believed the child support order had been modified by the declaration she filed on July 6, 2001. The court informed her that her belief was incorrect. Hamamoto argued that she had agreed with the custodial parent that child support would be deposited into a joint account held by the custodial parent and her son. The court continued the matter for Hamamoto to obtain proof that payment had been made to the custodial parent.

At the next hearing on July 25, 2008, Hamamoto did not appear and had not provided proof of payment. The Family Court continued the matter and

directed Defendant to contact Alvin Hamamoto, the custodial parent, and determine if payment had been made or if he was willing to waive the amounts due.  Defendant confirmed via telephone on July 25, 2008 that Alvin Hamamoto had received a payment from Hamamoto and the payment from CSEA of $517 and he considered those payments as full satisfaction of Hamamoto's support payments.

On August 1, 2008, Hamamoto requested that the hearing with the CSEA regarding the tax refund setoff be taken off because she paid in full on June 23, 2008, and the case in Family Court was near completion.  CSEA held an administrative hearing on August 5, 2008, concerning Hamamoto's objection to the setoff of her State tax refund.  Hamamoto did not appear.  The hearings officer found that the child support was owed and the setoff was proper.  Defendant was not involved in this hearing, issuing the setoff notice, representing CSEA with respect to the setoff, applying for the tax refund, or sending the setoff funds to Alvin Hamamoto.

The Family Court held its continued hearing on August 22, 2008. Hamamoto did not appear.  Defendant presented Alvin Hamamoto's written statement that Beverly Hamamoto had paid in full.  The Family Court ordered that the funds being held pursuant to the Notices of Levy be released and CSEA's

records be adjusted to show a zero balance.  Defendant's office faxed and mailed a copy of the Family Court order to First Hawaiian Bank, Bank of Hawaii and Merrill Lynch with instructions to release the accounts held.

Plaintiffs filed a complaint against Defendant in this Court on September 4, 2008.  Plaintiffs allege due process violations, First Amendment violations, legal malpractice, defamation, and violation of criminal statutes.[2] Plaintiffs filed a motion for summary judgment on December 15, 2008.  (Doc. # 21.)  Defendant filed an opposition and counter motion on January 22, 2009.  (Doc. # 34.)  Plaintiffs filed a separate concise statement of facts on February 5, 2009. Because Plaintiffs' statement of facts was filed late, this Court allowed Defendant to supplement its concise statement of facts on March 2, 2009. (See Doc. # 43.) Defendant filed a response on March 2, 2009.

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Dep't</u>

---

[2] Plaintiffs claim regarding violations of criminal statutes is nonsensical and is therefore dismissed for failure to state a claim.

of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to

dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett,

477 U.S. 317, 323-24 (1986).

 Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial -- usually,

but not always, the defendant -- has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

 Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  Id.  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.     Official Capacity

To the extent Plaintiffs have brought claims against Defendant in his

official capacity, those claims fail as a matter of law.

State officials acting in their official capacities are immune from suit

for monetary damages under the Eleventh Amendment since the suit is no different

from a suit against the State itself.  Will v. Mich. Dep't of State Police, 491 U.S.

58, 71 ("a suit against a state official in his or her official capacity is not a suit

against the official but rather is a suit against the official's office."); see also Hafer

v. Melo, 502 U.S. 21, 24-25 (1991) (holding that a defendant acting in his official

capacity receives the same immunity as the government agency to which he

belongs).  The only exception for a suit to go forward in an official capacity is a

suit "for prospective declaratory and injunctive relief . . . to enjoin an alleged

ongoing violation of federal law."  Wilbur v. Locke, 423 F.3d 1101, 1111 (9th Cir.

2005) (quoting Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041,

1045 (9th Cir. 2000); see Ex parte Young, 209 U.S. 123 (1908); see also Will, 491

U.S. at 71 n.10 ("official-capacity actions for prospective relief are not treated as

actions against the State."). To determine if the *Ex Parte Young* doctrine avoids an Eleventh Amendment bar to suit against an official, the "court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Miranda B. v. Kitzhaber, 328 F.3d 1181, 1189 (9th Cir. 2003) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)).

Here, Plaintiffs have not alleged an ongoing violation of federal law or any other type of prospective injunctive relief.  Indeed, this Court has already denied Plaintiffs' motion for preliminary injunction for failure to allege irreparable harm.  (Doc. # 50.)  For these reasons, Plaintiffs' claims against Defendant in his official capacity are DISMISSED.

II.     Standing of Plaintiff Aga

Plaintiff Aga asserts that his free speech rights were violated when Defendant did not let him present evidence in the Family Court proceedings. Defendant argues that Plaintiff Aga lacks standing to assert this claim and all other claims brought in this suit.  This Court agrees.

The determination of whether a plaintiff can establish standing involves two related components: the constitutional "case or controversy"

requirements of Article III, and the nonconstitutional prudential considerations.

See Warth v. Seldin, 422 U.S. 490, 498 (1975).

> Constitutional standing has three elements. First, the plaintiff must have suffered an "injury in fact" that is concrete, particularized, and actual or imminent. Second, there must be a causal link between the injury and the conduct of which the plaintiff complains. Third, it must be likely that a favorable decision will redress the plaintiff's injury.

Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 837 (9th Cir. 2007).

A prudential requirement of the standing doctrine requires that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499. A prudential requirement of standing is found in Federal Rule of Civil Procedure 17, which requires actions to be brought by the real party in interest. See In re Rodeo Canon Dev. Corp., 362 F.3d 603, 607 (9th Cir. 2004) ("[t]he real party in interest objection is not founded on Article III standing principles, but is a prudential rule intended to ensure that the party bringing the action is the party entitled to make the claim."); Fed. R. Civ. P. 17(a) ("[e]very action shall be prosecuted in the name of the real party in interest.").

Here, all claims brought in this suit relate to Hamamoto's obligations and bank accounts and tax refund. Aga has not presented any evidence

13

establishing that he has any legally protected interest in any of the claims, or

suffered an injury in fact.  Accordingly, Aga's claims are DISMISSED for lack of

standing.  Even if Aga had standing, all causes of action are dismissed for the

reasons set forth below.

III.    <u>Due Process Claim</u>

Plaintiffs[3] assert that their due process rights were violated.

Defendant claims Plaintiffs are asserting due process violations based upon issuing

Notices of Levy against her bank accounts and her State tax refund without

updating the amount owed and that Plaintiffs have no constitutional right to

updated notice.  Defendant also asserts that he is entitled to qualified immunity.

The doctrine of qualified immunity protects government officials

"from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known."  <u>Pearson v. Callahan,</u> -- S. Ct. --, No. 07-751, 2009 WL 128768, at

*6 (Jan. 21, 2009) (citation omitted).  In analyzing the qualified immunity defense,

the court must determine:  "(1) what right has been violated; (2) whether that right

was so 'clearly established' at the time of the incident that a reasonable officer

---

[3] Although Aga's claims have been dismissed for lack of standing, this Court
refers to both Plaintiffs since the decision on the merits would apply to Aga if he
had standing.

would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful." Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir. 1998), cert. denied, 525 U.S. 1016 (1998). It is within the court's discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 2009 WL 128768, at *9. The party asserting qualified immunity bears the burden of proving that the defense applies. Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1988).

"A particular right is 'clearly established' if the 'contours of [that] right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Jensen, 145 F.3d at 1085 (alteration in original).

A procedural due process claim hinges on proof of a protectible liberty or property interest; and a denial of adequate procedural protections. See Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998) (citations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (internal quotation and brackets omitted). "The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely

displace congressional choices of policy." <u>Landon v. Plasencia</u>, 459 U.S. 21,

34-35 (1982).  At a minimum, however, "[p]rocedural due process requires

adequate notice and an opportunity to be heard." <u>Kirk v. U.S. I.N.S.</u>, 927 F.2d

1106, 1107 (9th Cir. 1991).

Defendant argues that Plaintiffs' due process claim fails because it is

based upon not receiving notice that the amount Hamamoto owed had been

reduced from $6,868.00 to $4,578.20, and it was not clearly established that a

judgment debtor is entitled to receive updated notice.  Defendant cited

<u>Endicott-Johnson Corp. v. Encyclopedia Press</u>, 266 U.S. 285 (1924) for this

proposition.  In <u>Endicott-Johnson</u>, the Supreme Court held that

> the established rules of our system of jurisprudence do
> not require that a defendant who has been granted an
> opportunity to be heard and has had his day in court,
> should, after a judgment has been rendered against him,
> have a further notice and hearing before supplemental
> proceedings are taken to reach his property in satisfaction
> of the judgment. Thus, in the absence of a statutory
> requirement, it is not essential that he be given notice
> before the issuance of an execution against his tangible
> property; after the rendition of the judgment he must take
> 'notice of what will follow,' no fruther [sic] notice being
> 'necessary to advance justice.'

<u>Id.</u> at 288.  The Supreme Court upheld a state law that allowed a creditor with a

valid state court judgment to garnish the debtor's wages without additional notice.

The Court reasoned that the pre-deprivation proceeding was sufficient to put the

debtor on notice that his property could be subject to the creditor's claim.

This Court agrees with Defendant that it was not clearly established

that a judgment debtor is entitled to notice of the updated amount owed.[4]

Moreover, even if this Court construed Plaintiffs' claim as arguing a violation of

their due process rights because the enforcement statute does not provide

Hamamoto with an opportunity to be heard either before the Notices of Levy were

sent or shortly thereafter, it was not clearly established that they were entitled to

post judgment hearing regarding the Notices of Levy.[5]

---

[4] Even if it were clearly established, Hamamoto was well aware that she owed and failed to pay child support, and she was aware that she owed at least $4,528.70. Although CSEA sent Hamamoto a letter on October 9, 2007, stating that she owed $6,868.00, the Notices of Levy sent by Defendant noted that Hamamoto owed only $4,528.70. Moreover, all interactions in evidence after October 2007 with the CSEA, with Defendant, the administrative hearing, and the Family Court proceedings establish that $4,528.70 was the amount at issue and that Hamamoto was well aware of that. Indeed, Hamamoto admitted numerous times that she owed this amount.

[5] Hawaii Revised Statute section 576D-10.5(a) with respect to liens for enforcement of child support provides as follows:
"Whenever any obligor through judicial or administrative process in this State or any other state has been ordered to pay an allowance for the support, maintenance, or education of a child, . . . and the obligor becomes delinquent in those payments, a lien shall arise on the obligor's real and personal property and the obligor's real and personal property shall be subject to foreclosure, distraint, seizure, and sale, or notice to withhold and deliver, which shall be executed in accordance with this section or applicable state law. No judicial notice or hearing shall be necessary

Indeed, although courts have called into doubt the <u>Endicott-Johnson Corp.</u> holding, it has not been expressly overruled and several courts have still applied its holding in post judgment garnishment actions.  In addition, courts have applied the <u>Mathews</u> test, which requires a balancing of three factors, to determine the parameters of due process.  "[B]ecause procedural due process analysis essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent."  <u>Brewster v. Board of Educ. of Lynwood Unified School Dist.</u>, 149 F.3d 971, 983 (9th Cir. 1998) (internal quotation omitted).

Here, there is no corresponding factual and legal precedent entitling Plaintiffs to a post-judgment hearing.  Instead, the law is clear that where Plaintiffs did not challenge the amount due or any exemptions thereto, due process does not require a post-judgment hearing.  For example, applying the test announced in <u>Mathews</u>, the Ninth Circuit found that Washington State's process for collecting

<u>prior to creation of such a lien</u>." (emphasis added).

Subsection (i) provides that: "If there is a dispute between the obligor and the child support enforcement agency concerning the amount of the child support lien, the obligor may request in writing an account review. Upon receipt of a written request, the child support enforcement agency shall conduct a review of the obligor's account balance pursuant to its administrative rules."  Haw. Rev. Stat. § 576D-10.5(i).

past due child support did not violate the due process clause despite the fact that the procedures did not provide a post-garnishment administrative hearing. Duranceau v. Wallace, 743 F.2d 709, 711 (9th Cir. 1984).

In Duranceau, the husband had been required to pay child support in the divorce decree. Id. at 710. The Department of Social and Health Services had the right to receive the child support payments. Duranceau fell behind in his payments and the Department sent him a demand for payment. Duranceau won a judgment against the city of Tacoma in an unrelated lawsuit, and the Department sent the city of Tacoma an order to withhold and deliver a portion of Duranceau's judgment. The order described a statutory earnings exemption. The Department sent Tacoma a second order reflecting a higher amount to withhold due to support obligations that had increased in the interim. Duranceau received copies of each order and he requested a hearing.

The Ninth Circuit noted that Mathews required the court to weigh the following three factors to determine whether due process was afforded: (1) the private property interest, (2) the risk of erroneous deprivation and the probable value, if any, of extra safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or procedural requirement would entail. Id. at 711.

The Ninth Circuit stated that

> is hard to imagine a more compelling state interest than
> the support of its children. The problem of delinquent
> child support is national in scope, and has prompted
> Congress recently to enact strong measures to help states
> collect these debts. A second and more general interest is
> the effective enforcement of judgments. . . . Any rule that
> requires hearings after judgment diminishes the value of
> judgments and threatens to turn litigation into an endless
> round of procedures with no possibility of vindication or
> ultimate success.

Id. at 711-12.  The Ninth Circuit found that the judgment debtor had an interest in

certain valid defenses to the collection.  Id. at 712.  The Ninth Circuit noted that

the risk of erroneous deprivation was less than in cases that depended upon a

complex factual determination such as social security benefits and the sources of

error were few.  Finally, the Ninth Circuit held that a prompt administrative

hearing shortly after the garnishment of property did not serve the purposes of due

process.  Therefore, the court held that "[b]ecause of the strong governmental

interest in the support of children and the expeditious enforcement of judgments,

the relatively small risk of erroneous deprivation, and the negligible value of

alternative procedures, . . . the present procedures do not violate due process." Id.

Here, although Hawaii's statutory scheme is not identical to

Washington's scheme, it was not clearly established that Plaintiffs were entitled to

an administrative hearing shortly after the issuances of the Notices of Levy where they were not challenging the amount owed.  As such, Defendant did not act under a clearly unconstitutional statutory scheme in sending the Notices of Levy without providing a hearing for Plaintiffs.  For these reasons, Defendant is entitled to qualified immunity.  See Augustine v. McDonald, 770 F.2d 1442, 1445 (9th Cir. 1985) (finding the defendants were entitled to qualified immunity for garnishment actions because, *inter alia*, Arizona's post-judgment garnishment statute, which did not afford pre-garnishment notice and hearing, was not clearly unconstitutional); Katz v. Ke Nam Kim, 379 F. Supp. 65, (D. Haw. 1974) (finding due process did not require notice post-judgment for the garnishment of state employee's wages).

Summary judgment is therefore GRANTED in favor of Defendant on Plaintiffs' due process claim.

IV.    First Amendment Claim and Tax Refund Setoff

Plaintiffs allege that their First Amendment rights were violated because Plaintiff Aga was not permitted to argue on behalf of Plaintiff Hamamoto during the Family Court proceedings.   Plaintiffs also contest the tax refund setoff.

21

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiffs have not and could not show that Defendant personally participated in the decision by the Family Court that Plaintiff Aga could not act as Plaintiff Hamamoto's representative.  The evidence is clear that it was the Family Court judge that made the decision not to allow Plaintiff Aga to represent Hamamoto and Defendant had nothing to do with that decision.

Likewise, Defendant has provided evidence that he had no involvement with the tax refund setoff.  Plaintiffs produced no evidence to the contrary or evidence that could raise a question of fact.

Accordingly, summary judgment is GRANTED in favor of Defendant on Plaintiffs' First Amendment claims and claims related to the tax refund setoff.

V.   Legal Malpractice

It appears that Plaintiffs are attempting to sue Defendant for legal malpractice.  This claim fails because Defendant did not represent Plaintiffs, Plaintiffs were not beneficiaries of trust documents drafted by Defendant, and Defendant owed no duty to Plaintiffs.  Buscher v. Boning, 159 P.3d 814, 832 (Haw. 2007).  Instead, Defendant was Plaintiffs' adversary.  As stated by the

22

Hawaii Supreme Court "creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest.  Not only would the adversary's interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship."  Id.

Accordingly, summary judgment is GRANTED in favor of Defendant on these claims.

VI.   Defamation

Plaintiffs assert a defamation claim based upon the statement in the Notices of Levy that Hamamoto had refused or neglected to pay past due child support.  Defendant argues he is entitled to summary judgment because the statements were true.

The Hawaii Supreme Court has established the following four elements to sustain a claim for defamation:

> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Gonsalves v. Nissan Motor Corp. in Haw., Ltd., 58 P.3d 1196, 1218 (Haw. 2002).

Plaintiff Hamamoto has admitted that she owed $4,528.70 for missed child support payments.  Accordingly, Plaintiffs cannot establish that Defendant's statement was false.  For this reason, summary judgment is GRANTED in favor of Defendant on Plaintiffs' defamation claim.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion is DENIED and Defendant's motion is GRANTED.  Clerk to enter judgment in favor of Defendant.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 12, 2009.



_____
David Alan Ezra
United States District Judge

Edward J. Aga, et al. vs. Michael W. Steele, Civil No. 08-00400 DAE-LEK;
ORDER  DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT